In the Matter of the Claim of MARY ZELTOSKI, Respondent, against OSBORNE DRILLING CORPORATION and Another, Appellants. STATE INDUSTRIAL BOARD, Respondent.*

Third Department, November 14, 1933.

*Jeremiah F. Connor*, for the appellants.

*John J. Bennett, Jr., Attorney-General [Joseph A. McLaughlin* and *Roy Wiedersum, Assistant Attorneys-General*, of counsel], for the respondent State Industrial Board.

*Charles I. Friedman*, for the claimant, respondent.

HILL, P. J. The employer is a corporation having its offices in the Grand Central Terminal Building, New York city. It was engaged in " making foundation tests for buildings, tunnels, any public improvement." An official of the employer described the work in which deceased was engaged at the time of his death as follows: "He was a driller. He was in charge, his regular work was to be in charge of the drill and also to make the test borings. The last week that he was on the job he was doing helper's work because the work had run down and we didn't need so many drillers. We kept him on to the end and he was doing loading and unloading and getting the stuff together to ship up home."

The Industrial Board has found: " 6. The employment in which the deceased was engaged at the time of the accidental injuries which resulted in his death was entered into and the deceased was

---

* Revd., 264 N. Y. ——.

hired in the State of New York. The employer is a domestic corporation with office and principal place of business located in the State of New York. The location of the employment of the deceased with the said employer was in the State of New York and such employment was transitory and was not at a fixed location outside the State of New York. The work in which the deceased was engaged at the time of the accident which resulted in his death was incidental to his employment in the State of New York, such employment being incidental to a hazardous business being conducted by the said employer within the State of New York."

I believe that this finding is sustained by the evidence. It is undisputed that the contract of employment with deceased was made in the city of New York and his weekly pay checks were sent to him wherever he might be from the New York office. The following evidence was before the Board: " Q. How long was your husband employed by the Osborne Drilling Corporation? A. Well, about four years. * * * Q. The deceased during this four and a half years was sent by his employer, the Osborne Drilling Company, to different parts of the State, and outside the State? A. He was, yes, sir. * * * Q. When he returned to the city he was put to work on other jobs here in the State and outside the State? A. In or out. Q. Is that correct? Can you give me an idea of the various places, the places where Mr. Zelotski was sent to during his period of employment? A. Well, the first place he worked in New York State wherever there was work. He went up to Elmira, N. Y., he went to Calican, N. J., to Wilmington, Delaware. Q. Yes. A. He worked in Newburgh, N. Y., and then from there he went to Crafts, N. Y., then he went to Tennessee. Q. On that last job you received letters from him? A. I always did, weekly, yes, sir. Q. Can you give me an outline of the various places he went to for the Osborne Drilling Company when he left New York? A. When he left New York? Q. Yes. A. Well, first of all he went down to Spring City, Tennessee; then he went to — I don't know where it was, it was Knoxville and from Knoxville he went to Alabama and went to Dayton and from Dayton he went to Chattanooga, Tennessee. Q. He was killed in Chattanooga? A. He was killed in Chattanooga. Q. Do you know the salary your husband was receiving from the Osborne Drilling Company? A. Well, he received $48.00 per week. Q. Did he ever work for any other concern other than this during this four and a half years? A. No, sir. * * * Q. When was Mr. Zelotski sent to Calican, N. J., in September, 1931? A. Yes, sir. Q. He worked steadily for the Osborne Drilling Company until the time — A. Until the time that he died, yes, sir." Deceased was killed on May 12, 1932. Employer's bookkeeper gives his employment from September,

1931, until that time as follows: " September 9th to October 31st, Calican, N. J.; November 4th to February 9th, up at Putnam County, New York State; February 15th to the time of the accident down in Tennessee, with two days in Alabama. Q. What was the last job he worked on before he went to Tennessee? A. Board of Water Supply job up in Putnam County. That job was finished and he was coming in and we had nothing else for him to do, and he requested to be sent to Tennessee and we sent him to Tennessee. Q. How long after he finished with the job up the State was it before he went to Tennessee? A. Well, he left right away but it was six days before he started the Tennessee work. He had to have his car fixed to drive down in his car."

The so-called Tennessee work consisted in making test borings for the location of eleven dam sites along the Tennessee river. Deceased was so engaged for about three months, and his widow says he worked at Spring City, Knoxville, Chattanooga, Tenn., Dayton (probably Ohio) and at some point or points in Alabama. Except for brief intervals, he had worked for the same employer continuously either in New York, New Jersey or on the Tennessee work during the year immediately preceding his death.

This award should be affirmed. (*Matter of Smith* v. *Aerovane Utilities Corp.*, 259 N. Y. 126; *Matter of Smith* v. *Heine Boiler Co.*, 224 id. 9; *Matter of Post* v. *Burger & Gohlke*, 216 id. 544.)

RHODES, McNAMEE and BLISS, JJ., concur; CRAPSER, J., dissents, with an opinion.

CRAPSER, J. (dissenting). The employer is a drilling corporation making foundation tests for buildings, tunnels and public improvements. Its operations are limited to a fixed place, in the instant case the contract or job being test borings for the location of eleven dam sites in the Tennessee river for the government. With each job the employer employed men for that job.

The employer was a New York corporation and had an office in New York city where it employed one person. It had a warehouse in New Jersey in which to store its equipment. When a job was finished an employee would be through until he was rehired for another job.

The deceased was employed in New York for the job in Tennessee and he was paid from New York. He had worked with this employer about four years.

The deceased met his death in an accident on the 12th day of May, 1932. He had worked for the same employer at different places during 1931, each job being a separate contract and his pay stopping on the conclusion of each job and not commencing again until he was hired for a new job.

During the year 1931 he had worked from May 13 to May 20 at Endicott, N. Y.; from June 20 to July 21 at Raritan Bay, N. J.; August 2 and August 3 at Ridgefield, N. J.; and from September 9 to October 31 at Calican, N. J.; and from November 4 to February 9, 1932, in Putnam county, N. Y.; and from February 15 until the time of the accident in Tennessee, with the exception of two days when he was in Alabama.

The employer had no fixed place of business; it carried on wherever it could secure a contract, and each contract was separate and disassociated from all other contracts, the employees being paid from the New York office.

The test is whether the work outside of the State of New York is an incident of the employment of the workman and not merely an incident of the business of the employer. Here the employer is a New York corporation with an office in New York and takes jobs of testing out foundations wherever such jobs can be secured; each job is a separate and distinct entity. The work in Tennessee cannot be said to be incidental to any business carried on by the employer in this State.

In *Cameron* v. *Ellis Construction Co.* (252 N. Y. 397) it was said: " Hazardous employment here is regulated by the Workmen's Compensation Law; hazardous employment elsewhere, though connected with a business conducted here, does not come within its scope. Even where the contract of employment is made within the State, we have said that the State ' does not attempt to regulate the duty of foreign employers in the conduct of their business within foreign jurisdictions.' (*Matter of Smith* v. *Heine Boiler Co.,* supra.) * * *

" Occasional transitory work beyond the State may reasonably be said to be work performed in the course of employment here; employment confined to work at a fixed place in another State is not employment within the State, for this State is concerned only remotely, if at all, with the conditions of such employment."

The deceased's employment contemplated a single task, test drilling in Tennessee, and when the job was done his employment was terminated. The employment was not continuous; it was for a single task at a fixed place outside of the State. (*Cameron* v. *Ellis Construction Co.,* 252 N. Y. 394, 397, 398; *Matter of Baum* v. *New York Air Terminals, Inc.,* 230 App. Div. 531; *Matter of Amaxis* v. *Vassilaros, Inc.,* 258 N. Y. 544.) The State Industrial Board was without jurisdiction to make an award of death benefits under the law of the State of New York and the award appealed from should be reversed and the claim for compensation dismissed, with costs against the State Industrial Board.

Award affirmed, with costs to the State Industrial Board.